## THE THREE BROTHERS.

### THE CLARE.

(District Court, S. D. New York. April 13, 1908.)

TOWAGE — COLLISION BETWEEN TOW AND BRIDGE ABUTMENT — LIABILITY OF TUG.

A tug was proceeding up the Harlem river with two tows on hawsers, and keeping on the Manhattan side on account of the ebb tide. As she rounded the bend approaching Kingsbridge she came upon a scow which had been lying at the bulkhead on the Manhattan side, and which in shifting her position had swung directly across the tug's course, and in maneuvering to avoid such scow one of the tows was brought into collision with an abutment of the bridge and injured. *Held* that, while properly handled, the tug must be held in fault for navigating on the port side of the river in violation of the rules; that the scow was not in fault, not being required to provide against a tow coming up that side, and being entitled to use her own side.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, §§ 17–20.]

In Admiralty.

Foley & Martin, for libellant.

Alexander & Ash, for the Three Brothers.

Wing, Putnam & Burlingham, for the scow Clare.

ADAMS, District Judge. This action was brought by Charles Fox, the owner of the scow Atlas, against the tug Three Brothers, to re-

cover the damages received by the Atlas on the 10th of January, 1907, by reason of a collision while in tow of the tug with an abutment of Kingsbridge in the Harlem River. The tow was bound through the bridge and across the Hudson River to Weehawken, New Jersey. The tide was ebb running to the westward at the rate of 3 or 3½ knots per hour and setting strongly on the Bronx side of the river. The tug was engaged to tow the barge Driscoll from 133rd Street, and the Atlas from the vicinity of 216th Street, on the Manhattan side. The Driscoll was duly taken in tow and when 216th was reached, the tug picked up the Atlas, placing her next to herself, on two hawsers of about 50 feet each. The Driscoll was put close astern of the Atlas. The tow then swung around and proceeded up the river, about 100 feet from the bulkhead, intending to pass through the space of the bridge between the middle abutment and the one on the Manhattan side. The Clare was lying, with a number of other vessels, at the bulkhead on the Manhattan side to the southward of the bridge and, in order to change her position, she swung her whole length of about 100 feet out into the river and directly across the path of the tug and tow. The tug could not see the movement of the Clare, as there is a bend in the river there and the view was obstructed by obstacles on the shore, until she was within a distance of from 200 to 300 feet. She then stopped her engines and in manœuvring to avoid the Clare, she lost control of her tow and the Atlas struck one of the abutments. Whether it was the middle or the one on the Manhattan shore is disputed. The contact caused the damage complained of, said to amount to about $1,200.

The libellant alleged as faults in the libel: (1) that it was negligent of the tug to attempt to tow two scows under the circumstances, (2) that it was negligent for her to attempt to tow two scows at the same time through the bridge, (3) that she was negligent in proceeding at an excessive speed, (4) that she was negligent in not slowing down when approaching the bridge and (5) that she was negligent in towing the Atlas on a long hawser.

Thereafter the libellant brought in the Clare under the rule, alleging as faults: (1) that she attempted to shift her berth in the strong ebb tide by hand power, (2) that she attempted to shift her berth after the tug had given the bend whistle and (3) that she was permitted to swing away from her dock and across the course of the tug.

The Clare in her answer made no allegations of fault but at the conclusion of the trial moved, and was allowed, to amend her answer by alleging that in addition to the faults charged in the libel, the tug was in fault in not keeping on the starboard side of the channel.

The testimony shows, in addition to the above facts, that when the tug approached the Atlas, the latter was lying at the power house dock, at the foot of 216th Street, with her bow down stream, loaded with ashes. The Driscoll, then in tow, was put under the up stream or bow end of the Atlas and attached with two short hawsers. The tug then made fast to the Atlas by fastening two hawsers on her stern bitts, on opposite sides, and then leading them through chocks on her rail and made fast on the stern bitts of the tug. The Atlas was a square

ended scow, her bow and stern being exactly alike, so that she towed as well one way as the other. The towing bitts and chocks on her stern were the same as those on her bow, so that it made no difference which end was first, but she was deeply loaded, and if the Driscoll had been towed astern, being light, she might have injured the cabin of the Atlas.

The bridge was a drawbridge. The draws were operated, when required, but they were so high above the water that it was not necessary to have them opened for this tow. The double swing draw rested upon an abutment in the centre of the river, around which were protection piles. The ends of the draw, when it was closed, rested upon abutments on each shore. The distance between the bulkhead lines of the river was about 400 feet, some space being taken by an undredged portion of the river on the Bronx side which only left about 300 feet available for navigation.

Owing to the bend in the river, from about north north-east to northwest, the ebb current sets strongly on the Bronx side of the river up to and beyond Kingsbridge. It was, therefore, unsafe for a hawser tow to be taken through the opening on the Bronx side during the ebb tide, as such an attempt would probably result in the tow striking the shore or the bridge abutment on that side. It was usual for tows of such character to pass through the Manhattan draw and the proper course for that purpose was to keep on the Manhattan side of mid-channel and to pass the bulkhead about 100 feet away.

At the time in question, large quantities of iron to be used in the elevated structure of the subway as well as a quantity of brick and sand were piled on the bulkhead toward the southerly end so as to cut off a view from below the bend of vessels in the stream.

After the tug had been made fast, she started with her head down the stream but rounded to under a starboard helm, hooked up until she was heading up the river, when she slowed to one bell. The master was at the wheel, a lookout was stationed forward and she had an engineer on duty. The view of the master was obstructed, as above described, and as soon as he got headed up the river he blew a long bend signal. Not receiving a reply, he continued on his course a short distance when he blew another signal of the same character. He received no reply to this and assuming that his proposed course was clear, continued around the bend to a distance of about 100 feet from the Manhattan bulkhead. As he rounded the bend, he found that the Clare had swung away from the dock to such an extent that her bow was about 25 feet outside of a scow lying at the bulkhead, and her stern was out in the river so far that she was directly across the path of the tug and tow. It appears that she had finished discharging that morning and was being shifted in order that a loaded boat might be placed in the berth she had occupied and was allowed to swing across the river. When the situation of the Clare became visible to the master of the tug, he could not port his helm to go under her stern because that would have caused his tow to strike the Bronx side. He could not, under the circumstances, round to and continuing on make a collision between his tug and the Clare inevitable, he therefore stopped

his engines. At this time, the tug and the head of the tow were in the slack water of the Manhattan side, while the tail of the tow, being farther down stream, was in the strong current setting toward the Bronx shore. In this emergency he starboarded his helm and hooked up his engines, which threw the stern of the tug and the bow of the tow away from the Manhattan shore. In the meantime, the Clare was being hauled toward the Manhattan shore and the result of the combined efforts was to enable him to pass a few feet behind the Clare with his tug and tow. The strong pull, however, parted the port towing hawser leading to the Atlas and the tug was unable with the remaining hawser to properly guide the tow and the Atlas struck a stone abutment of the bridge, head, or rather stern, on, doing the damage complained of.

I think the dispute as to the abutment which was struck should be resolved in favor of the tug's contention that it was the one on the Manhattan side, rather than that in the middle. It is not of any great importance but such as it has should be determined favorably to the tug rather than the witnesses on the Atlas, who, although comparatively disinterested, were not as close observers of what took place. The middle abutment was surrounded by a rack and piling which would have prevented the contact which happened.

The testimony seems to establish the foregoing as a statement of the facts of the case and it would lead to an exoneration of the tug were it not for the admitted fact that she was navigating on the port rather than the starboard side of the channel, as required by Article 25. The collision could be accounted for by the presence of the Clare without fault on the part of the tug, unless the situation was governed by the said rule. I have no doubt that if the tug were navigating in a part of the river where she had a right to be, her explanation of the matter should be accepted as a justification of what she did. I think her manœuvres as she approached and navigated around the bend were as skillful as ordinary care required. I have no doubt either that, encumbered as she was with a hawser tow, she did everything which could be expected of her, and that it was practically impossible for her to avoid bringing the Atlas into contact with the abutment.

After, however, having given the matter the best consideration I can and making all allowances for the tug, I think that she was in fault for the collision because she was navigating on the wrong side of the river. It was her duty to navigate on the Bronx side and if she could not manage alone to keep her tow off the shore, which I believe, then she should have employed a helper tug. Or if one was not available, then the boats should have been taken through alongside, one at a time if necessary. There can be no question, I think, that by using one of these methods, the boats could have been towed without damage. It was doubtless more convenient to tow the boats in the way she tried but it was, in my judgment, a negligent manner of performing her duty to the tow.

In this view of the case, there does not appear to have been any negligence on the Clare's part. She could not be expected to provide for

the tug navigating on the wrong side of the river and was entitled to use her own side.

Decree for the libellant against the Three Brothers, with an order of reference. The petition against the Clare is dismissed.